Welcome to the United States Court of Appeals for the Fifth Circuit. We are delighted to be moving back into in-person arguments, and we're glad that you're here with us. Hold on one second. We have three cases on the docket this morning, and we will take a short break after the second argument before we go into the third. So, let's go ahead and call the first case, Advanced Physicians SC v. National Football League. That's number 20-10998. Mr. Aldous? May it please the Court, Your Honors, we are here at the intersection of state rights and the Congress' right to preempt certain laws, and of course, I'm speaking about ERISA, to a lesser extent about the LMRA. So, we're  LMRA. So, we're here at the intersection the LMRA. So, we're here the NFL disability benefits and that upset the NFL because, of course, the teams fund the disability plan. That's our contention. Okay, it's not, I mean, is that another way of saying that you're complaining that the NFL is directing the plan administrator to wrongly deny claims under the plan? No. Based on the complaint, there's not a single reference to the wrongful denial of benefits. Now, the NFL, in their brief, has tried to make that part, they've tried to insert that language into our complaint, but that complaint, the language of the complaint is clear. There is not a single allegation that says that they, that Cigna wrongfully denied the claims. Therefore, it makes our claim of interference with prospective. You don't claim that Advance would continue to treat the patients if they weren't paid, do you? No, but I'd contend that there's nothing in the complaint that would lead you to believe that Cigna or the plan was the only avenue of payment. For instance, these players don't, they only have the insurance coverage for like seven years, but subsequent treatment could be given after that under different payments or plans. So, I know that two district courts have said, you can only have a reasonable expectation if the patients are actually paying through the plan. I'm simply saying that the complaint doesn't allege that, and it doesn't need to. Neither does our Advance complaint seek to clarify or to enforce rights under the plan. And as the NFL points out, if Advance had sued the NFL and said, we want the value of the claims that were denied as are damages, that would be preempted. No question. I thought that the grabment in your complaint was that the NFL told either the players or the representatives that Cigna wouldn't cover occupation-related injuries. Well, I disagree a little bit. This is what, what I say the grabment in the complaint is, intentional interference with a prospective economic relationship to achieve a financial goal that is separate and apart from anything that is protected by RISA or by any of the cases in Illinois. If, for instance, if we'd sued the NFL and said that they don't have the right to, for instance, to say that our assignments weren't valid in the claim, that also would be preempted. And as the NFL points out, you can sue, you can sue another entity that's remote from the actual plan, and if you seek the benefits that were under the plan, it's preempted. I agree. If you sue an entity like Cigna and you assert a different claim, but you want the same thing, that's preempted. But you can't have the absence of both. The NFL is not a party to the plan. The NFL is not a fiduciary. The NFL is not in a contractual relationship with the players. All of those relationships flow through the individual member teams. So if you want to say that VADS could have brought its claim under 502A1B, it has to be either that the damages sought were recoverable through that, or the entity you're suing is an entity that could have been sued under that section. The NFL is neither, and we have specifically disclaimed any interest in the claims that were not paid. Moving to the second part, the second step was there is no independent legal duty to implicated by defendant's interference. Now, both Judge Shaw and Judge Fish said the same thing. They said, one, reasonable expectation of VADS entering into these additional relationships was dependent upon having payment from the plan, and since that's really already dealt with in the first part, I'm going to go to the second part, and the second part was whether the interference was intentional and unjustified, and this is where we get into a dispute as to what the law says. So in Illinois, the tort has four claims, and the third, I mean four elements, and the third element is purposeful interference that prevents the expectancy from ripening. Now, Judge Shaw and Judge Fish both said that it required the plaintiff to comply with the law. I do not deny that. Under Fellhauer, which is the case that I cited in the brief, the answer is what it's termed purposeful interference. Also in Dowd cited in the Supreme Court said purposeful interference and then said some impropriety. In HPI, which was decided before Fellhauser, it was the court held that if the allegations in a plaintiff's complaint implicates a privilege recognized under common or statutory law in Illinois, then the plaintiff has the burden to both plead and prove that the privilege doesn't apply. So the question here, and then there's subsequent cases from the lower courts in Illinois, and there's an interesting discussion in the Roy v. Coyne case about how there is in this dichotomy or difference of opinion in the Illinois courts, but the Fidelity National Title Insurance case says that when the court says improper interference, it means intentional with the purpose of injuring the plaintiff. So the question comes down, then, is justification an affirmative defense or is it an element of the plaintiff's claim? I submit to you that unless the complaint implicates a privilege under Illinois law, either statutory or common law, that that is not the case, that it is an affirmative defense that must be raised, and the court knows an affirmative defense can't support removal because that means the plaintiff's claim. So just tell me in plain words, what's wrong with the NFL telling Cigna don't cover something that's not covered in the policy? Well, if that's what they said, of course, that's not what's pled. What's pled is that they told Cigna to do something to harm advance. And I think what you're saying is, well, what harm is it if Cigna acted correctly? Well, there are other harms. For instance, just the delay damages alone from the delay. So it's been years, and it's, of course, still ongoing. It may eventually reach this court sometime in the future. But the question is, does the complaint allow for the possibility that I could prove damages to advance based upon the interference of the NFL that does not have anything to do with whether the claims could be denied or not, or properly denied or not? And the answer to that is yes, because the element of the claim is, the last element, is damages resulting from the interference. Is there a possibility that advance could prove damages from the interference based upon the act of the interference that are not related to the claims? So you don't allege specifically what the conduct was on the part of the NFL that harmed you? You don't say what it was? The complaint does say that, Your Honor, and it's . . . Without saying what was done? Well, no, it does say that the NFL became . . . in other words, how they interfered, exactly what they told Cigna, no, it doesn't say that. It says that the NFL . . . I'm looking at the complaint. Advance has discovered that claims . . . I'm sorry, I couldn't hear you. So I'm looking at Paragraph 15 of the complaint, and it says, Advance has discovered that NFL directed Cigna to deny all of Advance's claims as work-related. That's right. So to answer Judge Davis' question, I thought you said yes, it does in fact allege exactly what . . . Yes, but what form that took and such, I don't know. We just know that they told them not to pay . . . Premised on the claims. Right. So I'm not sure how you get around the fact that it's all premised on the claims. Well, so the NFL is not . . . of course, ERISA requires that an administrator act in a fiduciary duty towards the plan members, and if the NFL is not the fiduciary, and if the NFL is not an administrator of the plan, what right does the NFL have to tell anybody what to do to harm Advance? Can I ask you about the premise of your interference? So if I understand what I'm looking at in the complaint, and this is on the next page, Paragraph 16 and 17, the idea is that you had a seven-year relationship, Advance had a seven-year relationship with the players, that was premised on what? Word of mouth. I'm sorry, but the services you were providing were all claims provided under the plan, right? They were all paid under the plan, no question. And you had arrangements, Advance had arrangements with the players to have irrevocable assignments of their benefits under the plan, and so that's the premise of the interference, right, is that the claims previously paid under the plan stopped being paid under the plan. It goes beyond that, and it's because there's no . . . there's a patient relationship, it's not just who pays for the service. And I . . . you know, the allegations in Paragraph 17 place the NFL as a legal stranger to this relationship, and it also states how they became aware of our position with respect to the claims. You have to place the circumstances. And, Your Honor, I see that my time's up. If I . . . Anything else? Thank you, Counsel. You'll have time for rebuttal. May it please the Court. The crux of the party's dispute is whether resolving Advance claims will require interpretation of the ERISA-regulated NFL Players Insurance Plan. And I think we just had some discussions about Paragraph 16 and 17 of the complaint. I think that's resolving this claim will require interpretation, and that's because if you look at Paragraphs 16 and 17 of the complaint, they make very clear, 17 in particular, says that advanced reasonable expectation, one of the crucial elements of its claim, is that it would continue to treat its patients who were and are beneficiaries under the plan. So right away, the expectation is based on the fact that these were planned beneficiaries entitled to claim reimbursement. That becomes even clearer in a couple sentences later, where the interference on behalf of the NFL was the NFL's not telling the players to stop using Advance, not directly interfering, but rather telling the claims administrator, Cigna, to stop paying the claims. So the interference with that reasonable expectancy was a coverage denial. And finally, the harm, the only harm that Advance claims to have suffered is declining patient visits by beneficiaries of the program. Again, their only harm is the fact that their beneficiaries were no longer being covered and stopped getting paid for their services and stopped seeking Advance business. I don't see how you can look at this allegation in the complaint and say, this has nothing to do with a coverage denial. The whole entire factual predicate of the claim, the grovelment of the claim, is based centrally around a coverage denial. Now, so the only way that Advance expectation of future visits from plan beneficiaries was reasonable or that the NFL's actions were unjustified or, frankly, whether or not the NFL committed a tort whatsoever is if these plan coverages should have been granted but for, or approximately caused by the NFL's interference. And that question, of course, will require interpreting multiple plan provisions, including those defining whether the players' claims were for medically necessary services or work-related services as the plan defines those terms. And it's no coincidence that those are the exact same interpretive disputes that are currently pending summary judgment in the pending parallel Texas action that's also before Judge Fish. And I think it's notable that Judge Fish, in looking at these claims, said, these are very similar to the ones I'm already adjudicating. That was part of the rationale behind it. So again, I think Advance argument in the reply brief kind of boils down to it's irrelevant whether or not these plans were, or excuse me, these claims were granted. But in our view, the only way Advance could prove that the NFL's conduct caused injury, the only coherent theory of injury is really that the plan should have covered these claims if it had not been for the NFL's actions. And I think instructive on that point is Davila, there's some discussion, one of the footnotes in Davila, footnote three, says, you know, imagine a situation where a plan was very clear and says no appendectomies are covered. And in that circumstance, if you sued over your appendectomy not being covered, your injury would have flowed from the plan's terms and not from, of course, the actions of the plan administrator in that case. And that's very similar to what's going on here. If the court has any questions, I'm happy to answer them. If not, I'll just make a few brief points and sit down, including perhaps commenting on a couple of the points that my friend on the other side made. You know, first of all, I think there's no real dispute that the plaintiff could have and in fact did bring similar claims under ERISA, as Judge Fish found, as Judge Shaw found, virtually the same claims. And I think one way to really pin that down is if you look at the summary judgment brief that Advance filed in the Texas action, it's at docket entry number 230, in that case, 16CB2355, on the introduction, the very first page of the introduction, I think it's on page four of the brief, and I'm quoting, the real reason, unquote, that Cigna denied its claims, quoting again, is because that is what the NFL wanted. Okay, that is from their summary judgment brief in their claim pled under ERISA. And if you look at the table of contents, too, it's clear, it's all about the claim denial, of course. Cigna abused its discretion. The plan has not given the worker-related exclusion a uniform construction, etc. The second question is, well, is there an independent legal duty implicated by this? And I think for all the reasons I've already mentioned, I won't belabor the point. Clearly, there's no independent duty. It's clear from the complaint, and it's also, there's no coherent theory of injury without it. And I should point out that in complete preemption context, where Congress has decided to completely preempt an area using one of the broadest preemption clauses I'm aware of, along with the LMRA, any state law that relates to an insurance, or an employee benefit plan with exemptions not encompassed here, you know, Congress has made its choice. It's not, I think, as my friend on the other side said, a question of interpretation, intersection of states' rights and federal rights. Congress has spoken and said, we're going to broadly preempt this for very good reasons. And I think the reasons in this particular case are abundantly clear for a couple points. One, this is a multi-employer plan. There are participants in all 50 states. The idea that a federal decision might conflict with a series of state decisions all around the country would completely undermine Congress's goal in enacting a uniform federal scheme and an exclusive federal remedy, under which it chose certain benefits to the exclusion of others. And those benefits are not insubstantial. It's a recovery of the benefits themselves, equitable and injunctive relief, including preliminary injunctions in cases where speed is of the essence, even attorney's fees, where the plaintiff gets some measure of prevailing in that action. So it's not the case that Congress said there's no remedy. It just said that there is a remedy, and we've dictated the exclusive one. And I guess as a related corollary to that, too, of course, the players owe ADVANCE for their business, regardless of whether or not Cigna reimburses those claims. So again, I think that also goes to show at heart this is a coverage dispute, because ADVANCE has recourse against whatever harm they're suffering from Cigna not paying their claims. It's simply to keep treating the players and the players have independent payment obligations, which I think there's no dispute. And obviously, again, the danger of inconsistent judgments, I think, is particularly acute in this case, just because although it's not a requirement that there be two pending lawsuits to show preemption, here there actually are, that involve the very same claims. And I think I mentioned some of the language from that summary judgment pleading, but where you have a circumstance where there's an obvious threat that the Texas court could rule one way, and Illinois state court could rule another way. And you would have two conflicting plan interpretations, one federal, one state. What is the plan supposed to do in that circumstance? Obviously, in that circumstance, the plan, if this case had not been dismissed at the threshold, probably would have had to intervene in the suit and defend its judgment. So, or excuse me, defend its plan interpretation. And that's what Congress was trying to avoid. So just one or two small factual points. I think my friend on the other side mentioned that we're a legal stranger to this. I don't, it's not accurate. Obviously, we have to go by what the complaint alleges, but beyond that, the record, page 288 of the record, Section 4 of the CBA, it says administration, the Management Council will assume administrative responsibility for group insurance benefits. So the NFL Management Council is the administrator of the plan. It is not the fiduciary, I agree with that, but it is the administrator. It actually does the day-to-day discretionary coverage determinations, but the NFL emcee is the administrator. And the NFL is not a legal stranger to the NFL emcee, to be clear. The NFL emcee is part of the NFL. The NFL is just the named, the named administrator. But I would also say that it sounds like my friend said that it doesn't matter if it's actually a legal stranger, which we agree with. The Hubbard case that we cite below makes that clear. In that case, a party sued not the plan administrator, but rather a third party association. They said in that case that the third party association had published secret guidelines that caused the actual administrator to deny the claim. The court said, in essence, this is a dispute over coverage. It's preempted. Does this plan cover both active players and retired players? It does, Your Honor, and these are all former player claims. They're all former players. Hubbard for a series of time after, a period of time after Sue. I think that's all I had to say, unless there's any questions from the court. I'm happy to answer any questions. Thank you, counsel. Thank you. We ask that you respectfully affirm. Mr. Aldous, rebuttal. First, let me address the citation to a motion for, or a response to a summary judgment. I don't believe that's part of the court's record in this case, and I think it's outside the record. Therefore, it's appropriate for me to address. This is the summary judgment motion in the related case. I believe that's what the citation was to, and I don't believe that's part of the record in this case. Are you counsel in that case as well? I am. Understanding it's not in the record, but you're probably familiar with it, so explain to us. The point was that, well, if you compare the complaint here and the summary judgment motion there, they seem similar. What would you say to that? There were two, and this is why, because there was one filed prior to completion of discovery because of deadlines. However, when the discovery deadlines were changed and there was a ruling that allowed us to depose some other people who were part of the decision to deny, all the deadlines were wiped clean and new motions were filed. I believe the citation that he gave you was to the initial motion, so the correct or the right position that we would have would be that this second motion, and I do not have that docket number, but Judge I have, why would someone bring the same case if they already have that case pending somewhere else? In other words, they say that we brought the same case. I'll admit to you, if you believe the gravamen of this case is that we want to recover the benefits from the plan, then we lose, but that's not the only thing. The question I have to have is whether or not, although they're not a practical stranger to the transaction, they are a legal stranger to the transaction. If the court allows it, it's like they clothe themselves in the protection of ERISA and go around telling other people to not use the advance so that I can economically hurt them. It just seems that it's outside of it. I do want to address one thing. As I was talking earlier, the justification whether or not it is an element of the plaintiff's claim or it is an affirmative defense, I will just say that there are two ways to look at this. Even if justification is an element of the plaintiff's case, we have a plan that it was an intentional act by the NFL to interfere and to seek to harm advance. That would take the justification out of the equation and we could prove that simply by showing the NFL is a legal stranger to the transaction. But if you determine that justification would require us to prove that the claims themselves, that they should have been paid or that the telling the CIGNA to deny the claims, we have to prove that that was incorrect and it would be preempted. With respect to this, though, I want to remind the court, and of course I don't need to, but I'm going to do it because my appellate heart makes me. If there's a question about whether or not removal jurisdiction is appropriate, this court has said many times that you err on the side of remand because the constitutional issues require us to do that. So I would respectfully request that the court look at the allegations not as an effort to get the claims paid that we are already suing, but an effort to stop the intentional interference of the NFL with our patient relationships. Thank you, counsel. The argument on both sides, the case is submitted.